John J. Francis, Jr.
Michael C. Zogby
DRINKER BIDDLE & REATH LLP
500 Campus Drive
Florham Park, New Jersey 07932
(973) 360-1100
 *Attorneys for Plaintiffs*
 *Pfizer Inc., Warner-Lambert Company LLC,*
 *Gödecke GmbH, and Pfizer Pharmaceuticals LLC*

Of Counsel:
Jack B. Blumenfeld
Karen Jacobs Louden
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| | ) MDL No. 1384 |
| In Re Gabapentin Patent Litigation | ) Master Docket No. |
| | ) 00-CV-2931 (FSH) |
| ——————————————— | ) |
| | ) **This Filing Applies To:** |
| | )   <u>Teva Defendants</u> |
| | )   C.A. No. 00-CV-4168 (FSH) |
| | )   C.A. No. 00-CV-4589 (FSH) |
| | ) |
| | )   <u>IVAX Defendants</u> |
| | )   C.A. No. 00-CV-6073 (FSH) |
| | )   C.A. No. 01-CV-0193 (FSH) |
| | )   C.A. No. 01-CV-1537 (FSH) |
| | ) |
| | )   <u>Eon Defendants</u> |
| | )   C.A. No. 01-CV-2194 (FSH) |

## PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO STRIKE CERTAIN AFFIRMATIVE DEFENSES OF TEVA, IVAX, AND EON DEFENDANTS

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ............................................................................................. 3

I.   THE APPLICABLE LEGAL STANDARD ............................... 3

II.  DEFENDANTS DO NOT STATE A DEFENSE
     OF PATENT MISUSE ............................................................... 4

     A.   Defendants Acknowledge That They Seek
          To Extend The Doctrine Of Patent Misuse
          Farther Than It Has Ever Been Applied ........................... 4

III. DEFENDANTS DO NOT STATE A DEFENSE
     OF UNCLEAN HANDS ......................................................... 10

     A.   Defendants Have Not Alleged Any Close
          Connection Between The Alleged Bad Acts
          and W-L's Asserted Claim of Patent
          Infringement. ................................................................ 10

CONCLUSION ......................................................................................... 18

# TABLE OF AUTHORITIES

CASES

*Aptix Corp v. Quickturn Design Sys., Inc.*,
269 F.3d 1369 (Fed. Cir. 2001)................................................................. 14

*Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*,
547 F. Supp. 1095 (D.N.J. 1982) .............................................................. 17

*Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*,
747 F.2d 844 (3d Cir. 1984).......................................................... 11, 16-17

*Consolidated Aluminum Corp. v. Foseco Intern. Ltd.*,
910 F.2d 804 (Fed. Cir. 1990)................................................................. 13

*Cummins-Allison Corp. v. Glory Ltd.*,
C.A. No. 02-7008, 2003 WL 355470 (N.D. Ill. Feb. 12, 2003) ............... 8

*Delaware Health Care, Inc. v. MCD Holding Co.*,
893 F. Supp. 1279 (D. Del. 1995), *aff'd*, 141 F.3d 1153 (3d Cir. 1998). 10

*Digital Control, Inc. v. McLaughlin Mfg. Co.*,
225 F. Supp. 2d 1224 (W.D. Wash. 2002)................................................. 9

*In Re Neurontin Marketing, Sales Practices and Products Litig.*,
433 F. Supp. 2d 172 (D. Mass. 2006) ...................................................... 13

*In Re New Valley Corp.*,
181 F.3d 517 (3d Cir. 1999)....................................................... 2-3, 11, 17

*Intuitive Surgical, Inc. v. Computer Motion, Inc.*,
C.A. No. 01-203, 2002 WL 31833867 (D. Del. Dec. 10, 2002)............... 8

*Keystone Driller Co. v. General Excavator Co.*,
290 U.S. 240 (1933) ............................................................................ 3, 13

*Kothmann Enters., Inc. v. Trinity Indus., Inc.*,
455 F. Supp. 2d 608 (S.D. Tex. 2006) ..................................................... 2, 9

*Lucent Techs. v. Microsoft Corp.*,
544 F. Supp. 2d 1080 (S.D. Cal. 2008)..................................................... 9

*Monsanto v. McFarling*,
    363 F.3d 1336 (Fed. Cir. 2004)........................................................ 1, 4, 10

*Monsanto v. Rohm & Haas Co.*,
    456 F.2d 592 (3d Cir. 1972)................................................................... 3

*North Penn Transfer v. Victaulic Co.*,
    859 F. Supp. 154 (E.D. Pa. 1994) ............................................................ 4

*Reiffin v. Microsoft Corp.*,
    270 F. Supp. 2d 1132 (N.D. Cal. 2003) ..................................................... 8

*Stambler v. RSA Sec., Inc.*,
    243 F. Supp. 2d 74 (D. Del. 2003) ........................................................... 8

*Symbol Techs., Inc. v. Lemelson Med.*,
    422 F.3d 1378, *amended*, 429 F.3d 1051 (Fed. Cir. 2005)......................... 8

*United States v. Acorn Tech. Fund, L.P.*,
    C.A. No. 03-070, 2006 WL 237506 (E.D. Pa. Jan 31, 2006) .................. 10

*Windsurfing Int'l. Inc. v. AMF, Inc.*,
    782 F.2d 995 (Fed. Cir. 1986)................................................................. 5

*Woodbridge v. United States*,
    263 U.S. 50 (1923) ........................................................................... 2, 6-7

## RULES AND STATUTES

35 U.S.C. § 271 ................................................................................... 9

35 U.S.C. § 283 ................................................................................... 9

35 U.S.C. § 284 ................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ....................................................................... 10

Fed. R. Civ. P. 12(f) ............................................................................ 10

Priv. L. No. 56-821, 31 Stat. 1788 (1901).............................................. 7

**OTHER AUTHORITIES**

James W. Moore, 2 *Moore's Federal Practice* § 12.37[4] (3d ed. 2007) ...... 3

# PRELIMINARY STATEMENT[1]

Defendants' own arguments make clear that defendants have not stated an accepted ground for this Court to find patent misuse or unclean hands; rather, defendants rely on novel theories that effectively ask the Court to create new law and expand these narrow doctrines farther than any court has ever been willing to do.  In fact, defendants do not claim, either in their pleadings or briefs, that their defenses relate at all to W-L's claims of patent infringement, the *sine qua non* of patent misuse and unclean hands.  Thus, these defenses only invite digression in this already complex and prolonged litigation into extensive discovery (and presumably trial) of facts that have nothing to do with the patent infringement issues and that, even if true, could not state any legally cognizable defense.

Defendants' answering briefs completely ignore the "key inquiry of patent misuse": "whether, *by imposing conditions that derive their force from the patent*, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *Monsanto v. McFarling*, 363 F.3d 1336, 1341 (Fed. Cir. 2004) (emphasis added).  Rather than alleging that W-L

---

[1]   Because all defendants assert essentially the same arguments in their opposition briefs with respect to their defenses of unclean hands and patent misuse, we address those arguments collectively except where otherwise noted.

imposed *any* conditions on any party or improperly broadened the physical or temporal scope of the '482 Patent, defendants claim that a five-year delay in the '482 Patent *prosecution* constitutes patent misuse. There is simply no authority for the proposition that prosecution delay can constitute patent misuse, and defendants cite none. Indeed, the only authority they cite is *Woodbridge v. United States*, 263 U.S. 50 (1923), which was not a patent misuse case at all. *Woodbridge* concerned only the highly disfavored doctrine of prosecution laches, which defendants do not even purport to assert. Nor could they. No court has found prosecution laches based upon a delay of only five years, and in fact to date, "only one district court (now affirmed by the Federal Circuit) has found prosecution laches, and in that case the delays were as long as 39 years." *Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 455 F. Supp. 2d 608, 646 (S.D. Tex. 2006). Indeed, substantially longer delays have been held not to constitute prosecution laches.

Similarly, with respect to the defense of unclean hands, defendants misapply the Third Circuit's holding that "there must be a relationship between the inequitable conduct and the *claims brought before the court* in order for the doctrine [of unclean hands] to apply." *In Re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (emphasis added). Nowhere in either their pleadings or briefs do defendants even purport to link W-L's

alleged bad acts to its claims of patent infringement.   Defendants instead attempt to expand the doctrine of unclean hands by inviting the Court to link W-L's alleged illegal marketing of Neurontin® with its request for injunctive relief for infringement of the '482 Patent.   In support, defendants cite to the very cases that the Third Circuit considered when ruling in *New Valley* that the controlling precedent *requires* a relationship between the alleged unclean hands and the *claims* in the case.   *New Valley*, 181 F.3d at 525 (discussing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240 (1933), and *Monsanto v. Rohm & Haas Co.*, 456 F.2d 592 (3d Cir. 1972)).

As a matter of law, defendants have not stated a legally cognizable defense of patent misuse or unclean hands.

## ARGUMENT

### I.    THE APPLICABLE LEGAL STANDARD.

Contrary to Teva and IVAX's[2] assertion that "Rule 12(f) is not meant to afford an opportunity to determine disputed and substantial questions of law" (Teva Br. at 16), it is well-recognized that "[b]ecause legal insufficiency is expressly included in Rule 12(f), a motion to strike is the proper means for attacking the legal insufficiency of a defense."   James W.

---

[2]    Because they filed a joint brief, Teva and IVAX will hereinafter be referred to collectively as Teva.

Moore, 2 *Moore's Federal Practice* § 12.37[4] (3d ed. 2007). Even in the case Teva cites, *North Penn Transfer v. Victaulic Co. of America*, 859 F. Supp. 154 (E.D. Pa. 1994), the court struck multiple defenses pursuant to Rule 12(f).

Where, as here, accepting all alleged facts as true, defendants fail to state a legally cognizable defense of unclean hands or patent misuse, the Court can and should strike those defenses as a threshold matter.

## II.   DEFENDANTS DO NOT STATE A DEFENSE OF PATENT MISUSE.[3]

### A.   Defendants Acknowledge That They Seek To Extend The Doctrine Of Patent Misuse Farther Than It Has Ever Been Applied.

Defendants ignore completely what the Federal Circuit has said is the "key inquiry" of patent misuse: "whether, *by imposing conditions that derive their force from the patent*, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *Monsanto v. McFarling*, 363 F.3d 1336, 1341 (emphasis added). Nowhere do defendants allege that W-L imposed *any* conditions on defendants, or anyone else. More importantly, W-L's alleged actions in delaying the issuance of the '482 Patent could not have "derive[d] their force from the patent" because there was no

---

[3]   This argument relates only to Purepac and Teva. Eon has not asserted a patent misuse defense.

'482 Patent at the time.[4]  Without pleading that W-L *used* the '482 Patent to obtain anticompetitive effects, defendants cannot claim that W-L *misused* the '482 Patent.  Notably, defendants do not cite a single case where a court has found that a party's actions in prosecuting a patent constitute patent misuse. Defendants' patent misuse defense thus must fail as a matter of law.

Moreover, defendants do not contest that, to prove patent misuse, they must show that W-L "has impermissibly broadened the 'physical or temporal scope' of the patent grant." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986).  Yet they do not allege that W-L extended either the temporal or physical scope of the '482 Patent in a way that any court has held to support a defense of patent misuse.  Nor do they allege that W-L has attempted to do anything other than enforce the '482 Patent during its statutory 17-year term.  That should be the end of the matter.

Defendants instead advance the novel theory that an alleged five-year delay during prosecution caused a *shift* in the beginning and end dates of the 17-year patent term of the '482 Patent.  Purepac Br. at 16; Teva Br. at 26.

---

[4]      Teva asserts that a patent owner can engage in patent misuse "by improperly leveraging pending patent applications."  Teva Br. at 24 n.8. Teva does not allege that W-L leveraged the pending patent application in any way, however, rendering the discussion on this point purely academic.

Not surprisingly, none of the defendants cite a single case where any court has found that a shift in the term of a patent constitutes patent misuse.

Both Purepac and Teva concede that their allegations do not fit any of the classic examples of patent misuse, such as those in *Aronson* and *Virginia Panel* cited in Pls. Br. at 21 n.2. Instead, defendants argue that such cases simply do not "exhaust or restrict patent misuse through temporal-scope extensions to those particular situations." Purepac Br. at 17; *see also* Teva Br. at 23-24. Indeed, Teva candidly concedes that adopting its legal theory would require an extension of existing law. Teva Br. at 28. Simply put, there is no authority supporting defendants' legal theory that prosecution delay causing a shift in patent term can constitute patent misuse.

The *only* authority that either Purepac or Teva cite for this proposition, *Woodbridge v. United States*, 263 U.S. 50 (1923), was not a patent misuse case at all, but involved the doctrine of prosecution laches, which defendants admittedly have not pled. In fact, Mr. Woodbridge never acquired a patent to misuse. After receiving a notice of allowance in 1852 for his patent application on the latest cannon projectile technology, Mr. Woodbridge asked the Patent Office to delay the issuance of his patent by holding it in the Office's "secret archives." Under the laws of the time, such a delay was permissible for "one year, for the evident purpose of preparing a

model." *Id.* at 58. Mr. Woodbridge had already prepared a model, however, and relying on an oversight in the Patent Office, he attempted to unilaterally delay issuance of his patent for nine and a half years, explicitly citing as the reason for the delay that the patent had only recently become "pecuniarily available" (*i.e.*, by the onset of the Civil War). *Id.* at 53. He also sought to add new claims to cover what his competitors and the government had been doing in the almost ten-year interlude. *Id.* at 53-54. Due to this delay, explicitly contrary to the patent statute at the time, the Patent Office held that Mr. Woodbridge had forfeited his right to a patent. *Id.* at 63.

Forty years later, in 1901, Mr. Woodbridge sued the U.S. government, not under the patent laws, but based on a private law Congress passed granting him the right to sue the government for compensation for its use of his alleged invention. That law contained the express proviso, however, that the Court of Claims had to first determine whether Mr. Woodbridge's claim against the government should be barred by *laches*. Priv. L. No. 56-821, 31 Stat. 1788 (1901) (attached hereto as Ex. A). It was upon this proviso, and more than 70 years after initial allowance, that the Supreme Court ultimately barred Mr. Woodbridge's claim based on laches.

In fact, *Woodbridge* has only been cited in a handful of cases (including the Federal Circuit's *Lemelson* decision) and only with respect to

the doctrine of prosecution laches—a doctrine that exists specifically to address excessive delays in patent prosecution. Tellingly, however, although they repeatedly complain about a five-year "delay" in the prosecution of the '482 Patent, neither Purepac nor Teva even purports to state a defense of prosecution laches.

That is not surprising because the Federal Circuit has held that the doctrine of prosecution laches is to be used "sparingly" and applied "only in egregious cases of misuse of the statutory patent system." *Symbol Techs., Inc. v. Lemelson Med Educ. & Res. Found.*, 422 F.3d 1378, 1385, *amended*, 429 F.3d 1051 (Fed. Cir. 2005). This is because "[t]here are legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and the doctrine should be used sparingly lest statutory provisions be unjustifiably vitiated." *Id.* In fact, a delay of the length claimed here—five years—has never been held to support a defense of prosecution laches, whereas far longer delays have been found *not* to support the defense.[5] Indeed to date, "only one district court (now affirmed by the

_____

[5] *See Reiffin v. Microsoft Corp.*, 270 F. Supp. 2d 1132, 1156-59 (N.D. Cal. 2003) (denying summary judgment of laches despite 11-year delay in prosecution); *Cummins-Allison Corp. v. Glory Ltd.*, C.A. No. 02-7008, 2003 WL 355470, at *2, 25 (N.D. Ill. Feb. 12, 2003) (holding defendant failed to prove likelihood of success on prosecution laches even though delay was more than ten years); *Stambler v. RSA Sec., Inc.*, 243 F. Supp. 2d 74, 74-75 (D. Del. 2003) (seven-year delay between original claim to priority and the issuance of final patent was not unreasonable as a matter of law); *Intuitive Surgical, Inc. v. Computer*

Federal Circuit) has found prosecution laches, and in that case the delays were as long as 39 years." *Kothmann Enters., Inc. v. Trinity Indus., Inc.*, 455 F. Supp. 2d 608, 646-47 (S.D. Tex. 2006). Moreover, courts have explicitly refused to extend the doctrine of prosecution laches beyond existing case law. *See, e.g., Lucent Techs. v. Microsoft Corp.*, 544 F. Supp. 2d 1080, 1097 (S.D. Cal. 2008) ("The Court declines to extend prosecution laches beyond the existing precedent.").

Thus, defendants' allegations of a delay of only five years, accepted as true for purposes of this motion, do not and cannot support a defense of prosecution laches, as a matter of law. Defendants cannot avoid controlling case law by calling this disfavored defense by another name— patent misuse.

In the end, defendants can only complain about the legal effects of the '482 Patent grant. These effects, including the 30-month stay, potential damages and an injunction, are explicitly authorized by statute as within the patent grant. 35 U.S.C. §§ 271, 283-84. Notably, defendants do not allege that the '482 Patent was improperly listed or that the '482 litigation was sham.

---

*Motion, Inc.*, C.A. No. 01-203, 2002 WL 31833867, at *4-6 (D. Del. Dec. 10, 2002) (finding no laches despite almost nine-year delay); *Digital Control, Inc. v. McLaughlin Mfg. Co. Inc.*, 225 F. Supp. 2d 1224, 1228 (W.D. Wash. 2002) (granting summary judgment of no laches even though delay was more than ten years).

As the Federal Circuit has stated, "[i]n the cases in which the restriction is reasonably within the patent grant, the patent misuse defense can never succeed." *Monsanto*, 363 F.3d at 1341.

Defendants' patent misuse defense thus fails as a matter of law.[6]

## III. DEFENDANTS DO NOT STATE A DEFENSE OF UNCLEAN HANDS.

### A. Defendants Have Not Alleged Any Close Connection Between The Alleged Bad Acts and W-L's Asserted Claim of Patent Infringement.

Defendants concede that the defense of unclean hands requires a direct relationship between the bad acts alleged and the plaintiff's claim. Purepac Br. at 10; Teva Br. at 17; Eon Br. at 5-6. Defendants make new allegations in their answering briefs (not stated in their pleadings), attempting to link W-L's alleged wrongful acts to the *relief W-L requested*.[7] Defendants,

---

[6]  Teva's assertion that patent misuse is "a mixed question of law and fact" is irrelevant. If courts were forbidden from striking (or dismissing) any defense or action that could potentially contain a question of fact, Rule 12(b)(6) and part of Rule 12(f) would be rendered without effect. Where, as here, a defendant has failed to state a defense as a matter of law, accepting the plead allegations as true, the defense may be stricken. *United States v. Acorn Tech. Fund, L.P.*, C.A. No. 03-070, 2006 WL 237506, at *4 (E.D. Pa. Jan 31, 2006); *see also* Pls. Br. at 11-12.

[7]  *See Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1284 n.1 (D. Del. 1995) ("Facts…raised by counsel for the first time in a legal memorandum, are not properly considered by the Court when deciding a Rule 12(b)(6) motion. The Court must limit its consideration to the facts alleged in the complaint…."), *aff'd*, 141 F.3d 1153 (3d Cir. 1998).

however, do not (because they cannot) attempt to tie W-L's alleged bad acts to its *claim of patent infringement*.  For example, Purepac argues only that "*to the extent* [W-L] seeks to enjoin Purepac from selling gabapentin products for off-label uses [W-L]'s *pursuit of injunctive relief* relates directly to its illegal marketing activities."  Purepac Br. at 12 (emphasis added).   Similarly, Teva argues only that the alleged bad acts relate "to the equitable relief it seeks" (Teva Br. at 17), and Eon only relates the bad acts to the "injunctive relief [W-L] seek[s]."  Eon Br. at 6.   These new allegations, not found in the pleadings, cannot support an unclean hands defense, which requires a close connection between the alleged bad acts and "the subject matter of [W-L's] claim," not the requested relief.  *Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*, 747 F.2d 844, 855 (3d Cir. 1984).

> The Third Circuit has held:

> [t]he precedents that we find controlling make clear that *there must be a relationship between the inequitable conduct and the claims brought before the court* in order for the doctrine [of unclean hands] to apply; even then, the court has discretion to limit the reach of the doctrine to only some of the claims. . . . When applying the doctrine, the courts in this Circuit have generally been clear that *the connection between the misconduct and the claim must be close*."

*In Re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999) (emphasis added).

Defendants do not explain in either their pleading or briefs how W-L's alleged illegal marketing *relates to* W-L's claim of infringement of the '482 Patent—let alone how it *closely connects*. Indeed, defendants never discuss the elements of patent infringement or the subject matter of the '482 Patent at all. Nor do defendants allege how the purportedly illegal marketing harmed them in any way.[8] Rather, they complain only about W-L's marketing of its *product*, Neurontin®, but do not tie it in any way to W-L's assertion of its *patent*.

Teva's reliance on the Supreme Court's statement in *Keystone Driller*—that the alleged bad acts must "ha[ve] immediate and necessary relation *to the equity that he seeks* in respect of the matter in litigation"—is misplaced. Teva Br. at 17 (emphasis in original) (citing *Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)). Teva mistakenly equates the Court's reference to a party seeking equity with W-L requesting an injunction as one form of relief. The *Keystone Driller* Court itself explained that the alleged wrongful acts must relate to "something brought before the court for adjudication," holding that plaintiff's use of a "decree of [patent] validity there obtained [by the undisclosed corruption of a witness] in

---

[8]      Indeed, defendants do not and cannot dispute that, because their generic products are AB substitutable for Neurontin®, they benefit from (rather

support, if not indeed as the basis, of its applications" could not "fairly be deemed to be unconnected with the causes of action." *Keystone Driller*, 290 U.S. at 245-46. Thus it was plaintiff's use of the fraudulently obtained decree in support of its claims that resulted in a finding of unclean hands. *Id.* at 247. The Federal Circuit has also further clarified that "[i]n *Keystone Driller*, the Court considered the relation of the inequitable conduct to the equity requested by the plaintiff; *namely, enforcement of each of the separate patents-in-suit.*" *Consolidated Aluminum Corp. v. Foseco Int'l Ltd.*, 910 F.2d 804, 810 (Fed. Cir. 1990) (emphasis added).

Defendants do not, and cannot, allege any connection–let alone a close connection—between the alleged off-label marketing of Neurontin® and W-L's claim that defendants have infringed the '482 Patent. W-L's alleged illegal marketing of Neurontin® in the 1990s simply has nothing to do with W-L's right to sue to enforce the '482 Patent. Defendants' complaints concern W-L's marketing of its *product,* not the enforcement of its *patent.*[9] Moreover, the '482 Patent is not limited to any use, but rather generally

---

than are harmed by) any prescription of gabapentin for any alleged off-label use.

[9] Moreover, defendants do not dispute that, even if they could show any harm to them, which they plainly cannot, they could not assert any claim against W-L for its alleged marketing practices because there is no private right of action for violation of FDA regulations. *In Re Neurontin Marketing, Sales Practices and Products Litig.*, 433 F. Supp. 2d 172, 179 (D. Mass. 2006).

concerns formulations of gabapentin substantially free from lactam.  Thus, W-L has the right to collect damages for and enjoin infringement of the '482 Patent, regardless of the use for which an infringing product is prescribed.

Indeed both Purepac and Teva acknowledge (as they must) that Judge Chesler already held that defendants' allegations of off-label marketing do *not* relate to W-L's claim of patent infringement.  All that Purepac can muster, however, is the unsubstantiated declaration that "he wrongly decided the issue."   Purepac Br. at 12.  Teva on the other hand, asserts that Judge Chesler did not "consider the precise issue here . . . whether [W-L]'s unclean hands relate to the injunctive relief it seeks."  Teva Br. at 22.  As stated before, however, unclean hands must relate to the claim of patent infringement, not the relief requested.[10]

Defendants also do not contest that defendants' own pleadings demonstrate that the alleged bad acts have ceased, were remedied, and did not "give rise to" W-L's '482 Patent or its right to sue for infringement, an important factor for unclean hands.  *See Aptix Corp v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1376 (Fed. Cir. 2001) ("where the misconduct has ceased and the right claimed in the suit did not accrue because of it, the misconduct

---

[10]     Even looking at the relief requested, as defendants argue should be done, there is no relationship between the alleged off-label marketing

will be held to be collateral and not to defeat the right to affirmative relief."); Pls. Br. at 18. Neither Teva nor Eon even attempt to rebut this. Purepac attempts to allege new facts to argue that "the effects of W-L's illegal marketing persist," but in so doing Purepac admits that its counterclaim does not contain such an allegation. Even taking Purepac's new unpled allegations as true, however, Purepac still has not alleged that W-L's purported off-label marketing gave rise to, or had any relationship to, W-L's claim for infringement of the '482 Patent.

Purepac and Teva also cite to Judge Lifland's decision denying a preliminary injunction, in which he considered the allegations relating to off-label marketing in weighing the harm to W-L in the absence of an injunction. Purepac Br. at 12; Teva Br. at 19. Judge Lifland offered no opinion as to whether W-L's alleged off-label marketing relates to W-L's claims of patent infringement, however. This motion, in contrast, seeks to strike as insufficient defendants' unclean hands defense because the alleged illegal marketing of Neurontin® has nothing to do with W-L's patent claims.

Defendants fail to distinguish the Third Circuit's decision in *Ciba-Geigy* (cited in Pls. Br. at 17), which squarely supports striking

_____

and the injunction of the manufacture, use and sale of products covered by the '482 Patent that W-L seeks in this action.

defendants' unclean hands defense.  In *Ciba-Geigy*, the defendants alleged that the innovator company had violated FDA regulations on marketing "to increase the probability that [its drug] would be prescribed to patients" for a use for which it was not approved. *Ciba-Geigy*, 747 F.2d at 855.  Later, when the innovator company sought to enjoin the generic company from entering the very market where it had earlier attempted to increase its sales, the generic asserted a defense of unclean hands.  The Third Circuit affirmed the district court's rejection of the generic's unclean hands defense, and held that this situation, involving similar alleged wrongdoing (violation of FDA regulations), similar alleged motivation (increasing sales), and similar injunctive relief being sought (taking a generic product off the market), did not provide the necessary "close relationship" for unclean hands.

Purepac and Teva attempt to distinguish *Ciba-Geigy* on the ground that the alleged wrongful conduct did not relate to the plaintiff's claim of trade dress infringement.  Purepac Br. at 13; Teva Br. at 21.  That, however, is precisely the point.  The allegations of wrongful conduct in *Ciba-Geigy* had no more to do with the plaintiff's claim of trade dress infringement than the allegations of off-label marketing here have to do with W-L's claim of patent infringement.

Teva's further argument (based on the district court's underlying decision) that "[s]ince it made no mention of Ciba-Geigy's conduct, it appears the district court did not view Ciba-Geigy's bad acts as outweighing the public's interest when it balanced the equities," is misplaced.  Teva Br. at 21. Although it is true that unclean hands requires conduct sufficiently inequitable to bar an injunction, the district court made no mention at all of the defense of unclean hands or Ciba-Geigy's "bad acts" in its opinion granting a preliminary injunction.  *Ciba-Geigy Corp. v. Bolar Pharm. Co., Inc.*, 547 F. Supp. 1095 (D.N.J. 1982).  Thus, Teva attempts to foist upon the district court a reason for its silence that simply does not exist.   In contrast, the Third Circuit expressly referenced the defense of unclean hands, and clearly stated that "*the alleged wrongdoings do not relate to the subject matter of Bolar's claim* and, consequently, we cannot say the district court committed reversible error in rejecting Bolar's unclean hands defense."  *Ciba-Geigy*, 747 F.2d at 855 (emphasis added); *see also New Valley*, 181 F.3d at 525 ("evidence that Ciba had mislabeled drugs, sold adulterated batches of drugs and violated FDA regulations was insufficient to warrant application of unclean hands, as it did not involve nor relate to the matter of Ciba's claims against Bolar.").

Defendants' defense of unclean hands fails as a matter of law.

## CONCLUSION

For the reasons set forth in W-L's opening brief and herein, defendants' affirmative defenses of unclean hands and patent misuse should be stricken.

John J. Francis, Jr.
Michael C. Zogby
DRINKER BIDDLE & REATH LLP
500 Campus Drive
Florham Park, New Jersey  07932
(973) 360-1100
Attorneys for Plaintiffs Pfizer Inc.,
    Warner-Lambert Company LLC,
    Gödecke GmbH, and Pfizer
    Pharmaceuticals LLC

OF COUNSEL:

Jack B. Blumenfeld
Karen Jacobs Louden
MORRIS, NICHOLS, ARSHT &
    TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware  19899-1347
(302) 658-9200

2476981

EXHIBIT A

1788   FIFTY-SIXTH CONGRESS. Sess. II. Chs. 799, 820, 821.  1901.

pension roll, subject to the provisions and limitations of the pension laws, the name of William Allen, late scout and spy in the United States Army, and pay him a pension at the rate of twelve dollars per month.

Approved, March 1, 1901.

---

March 2, 1901.

**CHAP. 820.**—An Act For the relief of John M. Guyton.

John M. Guyton.
Payment to.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the sum of four hundred and eighty-four dollars and seventy-nine cents be allowed to John M. Guyton, former postmaster at Blacksburg, South Carolina, being the amount deposited by him to cover a deficiency arising in his office in the year eighteen hundred and ninety, which deposit was made to meet a loss by the embezzlement of a clerk on or about the thirtieth day of January, eighteen hundred and ninety, without blame or fault on the part of the said John M. Guyton, and that a sum sufficient to pay the allowance now made is hereby appropriated out of any moneys not otherwise appropriated.

Approved, March 2, 1901.

---

March 2, 1901.

**CHAP. 821.**—An Act Referring to the Court of Claims the claim of William E. Woodbridge for compensation for the use by the United States of his invention relating to projectiles, for which letters patent were ordered to issue to him March twenty-fifth, eighteen hundred and fifty-two.

William E. Woodbridge.
Claim of for use of certain invention referred to Court of Claims.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the claim of William E. Woodbridge for compensation for the use of his alleged invention relating to projectiles for rifled cannon, for which letters patent were ordered to issue March twenty-fifth, eighteen hundred and fifty-two, by the United States Government, be, and the same is hereby, referred to the Court of Claims of the United States, which court is hereby vested with jurisdiction in the premises, and whose duty it shall be to hear and determine, according to its usual rules of procedure—

Scope of hearing.

First. Whether the said Woodbridge was the original and first inventor of the said invention and entitled to a patent therefor.

Second. To what extent the said invention has been used by the United States Government, and what amount of compensation, if any, the said Woodbridge ought to receive, in equity and justice, from the United States Government for the past use of said invention. And in considering and determining the compensation to be made, if any, the said court shall, if it find that the said Woodbridge was the first and original inventor of said invention and entitled to a patent at the time of its order to issue, namely, March twenty-fifth, eighteen hundred and fifty-two, proceed and be guided in all respects as though the aforesaid letters patent had been actually issued for the term of seventeen years from the date of the aforesaid order to issue; the court to render judgment, irrespective of lapse of time, in favor of the claimant with the same effect, including right of appeal, as judgments generally of said court: *Provided, however,* That the said court shall first be satisfied that the said Woodbridge did not forfeit, or abandon, his right to a patent, by publication delay, laches, or otherwise; and that the said patent was wrongly refused to be issued by the Patent Office.

Proviso.
—no laches, etc.

Approved, March 2, 1901.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

John J. Francis, Jr.
Michael C. Zogby
DRINKER BIDDLE & REATH LLP
*A Delaware Limited Liability Partnership*
500 Campus Drive
Florham Park, New Jersey 07932
Attorneys for Plaintiffs

OF COUNSEL
Jack B. Blumenfeld
Karen Jacobs Louden
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 N. Market Street
P.O. Box 1347
Wilmington, Delaware 19899

|  |  |
|---|---|
| | VIA ELECTRONIC FILING |
| : | |
| : | Hon. Faith S. Hochberg, U.S.D.J. |
| : | Hon. Patty Shwartz, U.S.M.J. |
| **In re Gabapentin Patent Litigation** : | MDL Docket No. 1384 |
| : | |
| : | **This Filing Applies To:** |
| : | <u>Teva Defendants</u> |
| : | C.A. No. 00-CV-4168 (FSH) |
| : | C.A. No. 00-CV-4589 (FSH) |
| : | |
| : | <u>IVAX Defendants</u> |
| : | C.A. No. 00-CV-6073 (FSH) |
| : | C.A. No. 01-CV-0193 (FSH) |
| : | C.A. No. 01-CV-1537 (FSH) |
| : | |
| : | <u>Eon Defendants</u> |
| : | C.A. No. 01-CV-2194 (FSH) |
| : | |

## CERTIFICATION OF SERVICE

I, Michael C. Zogby, an attorney in the State of New Jersey, and an associate at the law firm

of Drinker Biddle & Reath LLP, hereby certify that I have, on the 17th day of September 2008,

caused the foregoing Reply Brief in Support of Plaintiffs' Motion to Strike Certain Affirmative

Defenses of Teva, IVAX, and Eon Defendants to be served by electronic mail and overnight mail

upon:

Allyn Z. Lite, Esq.
Michael E. Patunas, Esq.
Lite DePalma Greenberg & Rivas, LLC
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
alite@ldgrlaw.com
mpatunas@ldgrlaw.com
*Attorneys for Teva and IVAX*

Donald Horowitz, Esq.
Law Offices of Donald Horowitz
24 Bergen Street
Hackensack, New Jersey 07601
don@dhlawfirm.net
*Attorneys for Sandoz Inc.*

Arnold B. Calmann, Esq.
Saiber, LLC
One Gateway Center, 13th Floor
Newark, New Jersey 07102
abc@saiber.com
*Attorneys for Purepac*

Steven J. Lee, Ph.D., Esq.
Elizabeth Holland, Esq.
Kenyon & Kenyon LLP
One Broadway
New York, New York 10004
slee@kenyon.com
eholland@kenyon.com
*Attorneys for Teva and IVAX*

Richard J. Basile, Esq.
St. Onge Steward Johnston & Reens, LLC
986 Bedford Street
Stamford, Connecticut 06905
rjb@ssjr.com
*Attorneys for Sandoz Inc.*

- 2 -

Edgar H. Haug, Esq.
Steven M. Amundson, Esq.
Frommer, Lawrence & Haug, LLP
745 Fifth Avenue, 10th Floor
New York, New York 10151
ehaug@flhlaw.com
samundson@flhlaw.com
*Attorneys for Purepac*

/s/ Michael C. Zogby
Michael C. Zogby

FP01/ 3212690.1